COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MARTHA A. DELGADO, | § | 08-17-00163-CV |
| Appellant, | § | Appeal from the |
| v. | § | 388th District Court |
| JOSE LUIS DELGADO, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2015DCM5202) |

## O P I N I O N

This is an appeal from a decree of divorce dissolving the marriage between Appellant Martha A. Delgado ("Wife") and Appellee Jose Luis Delgado ("Husband"), and dividing the couple's community property. Wife challenges the property division, which she asserts disproportionately favors Husband.

## BACKGROUND

The parties ceased living together as husband and wife in May 2015. In July 2015, Husband filed for divorce on the ground of insupportability. He testified at trial that Wife had been unfaithful, and also that she had stopped cooking and cleaning for him and an adult son who still lived at home.[1] He acknowledged asking her to give him her front door key, but denied kicking

---

[1] This son was a minor at the time the divorce was filed, but had turned eighteen by the time of trial.

her out of the marital residence. Wife, on the other hand, testified that Husband was drunk, took her keys, and kicked her out of the house.

Husband is a high school graduate with one year of university education. He testified that although Wife did not graduate from high school, her English skills are better than his. Husband's gross wages are approximately $2,100 per month. His weekly take-home pay is $335. He has diabetes and high blood pressure, and is considering applying for disability. He has a 401(k) valued at approximately $9,000, against which he took a $7,000 loan, which he is repaying through payroll deductions.

Wife testified concerning a variety of jobs she has held in the past, including a job as a secretary, one assisting a business with its accounting, and one making telephone collections. Husband acknowledged that Wife worked off and on during the marriage, but testified that she did not help pay any of the household bills other than groceries. He indicated that she used much of her earnings to buy herself clothes. Wife testified, though, that she did buy some things for the house, such as a microwave. At the time of trial, Wife was living with her daughter and helping care for her grandchildren. The daughter was paying her approximately $1,200 per month.

Husband testified that the marital residence has a value of approximately $80,000 to $90,000, with a mortgage balance of $8,000 to $9,000. The parties stipulated that the home was appraised for tax purposes at $94,000. All of the couple's furniture is paid for, as is Husband's 2009 Honda Accord. Husband pays $412 monthly for a 2012 Mercedes owned by the couple's son, Jose Delgado, Jr., and $242 monthly for a 2014 Hyundai Genesis owned by another son, Brandon Delgado.

At the time of trial, Wife was driving a 2012 Honda Pilot, which her daughter was helping her pay for. She testified that she has a number of credit cards in her name but that she stopped

2

paying on those cards when she left the marital residence. She also testified that she did not put any additional charges on those cards after that time.

On March 23, 2017, the trial court signed a document titled, "Findings and Orders of Final Divorce" ("Findings and Orders"), which reflects the court's rulings on the couple's property. Husband is awarded the marital residence, the 2009 Honda Accord, and his 401(k). He is responsible for paying the mortgage on the home, as well as the debt on the 2012 Mercedes and the 2014 Hyundai. Wife is awarded $34,000, paid in $250 installments over the course of 136 months, as well as a couch, Christmas tree, and decorations that she had specifically requested. She is responsible for paying "debt in her name."

On June 27, 2017, the trial court signed a final decree of divorce dissolving the couple's marriage on the ground of insupportability. The decree incorporates the rulings reflected in the Findings and Orders with further details. One such detail is that the monetary award to Wife shall bear zero percent interest. The decree also states that Wife is responsible to pay debts solely incurred by her after May 2015, rather than "debts in her name." Wife now appeals from the final decree of divorce.

### ISSUES

In five issues, Wife asserts that the trial court abused its discretion by (1) dividing the marital estate without sufficient information before it; (2) dividing the marital estate in a manner that is manifestly unfair or unjust to Wife; (3) treating the debt on two cars as community debt but not treating the cars as community assets; (4) granting Wife a money judgment instead of ordering the community residence sold and the proceeds divided; and (5) ordering that the money judgment in Wife's favor bear zero percent interest.

### STANDARD OF REVIEW

3

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX.FAM.CODE ANN. § 7.001. The court's determination of a just and right property division is reviewed for abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Kaftousian v. Rezaeipanah*, 511 S.W.3d 618, 621 (Tex.App.—El Paso 2015, no pet.).

"A trial court enjoys wide latitude in dividing the marital estate, and we presume that the trial court properly exercised its discretion in reaching its decision. Accordingly, we will not overturn that decision unless the complaining party demonstrates that it was so unjust and unfair as to constitute an abuse of discretion." [Citations omitted]. *Kaftousian*, 511 S.W.3d at 621; *see Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). Our review employs a two-pronged analysis: "(1) Did the trial court have sufficient information upon which to exercise its discretion?[;] and (2) Did the trial court abuse its discretion by making a property division that was manifestly unjust or unfair?" *Chafino v. Chafino*, 228 S.W.3d 467, 472 (Tex.App.—El Paso 2007, no pet.).

## DISCUSSION

*Sufficiency of information upon which to exercise discretion*

Wife first contends that the trial court abused its discretion because it did not have sufficient information upon which to exercise its discretion. *See Chafino*, 228 S.W.3d at 472. Wife specifically contends that there is no evidence of the value of (1) the 2012 Mercedes, 2014 Hyundai Genesis, 2012 Honda Pilot, or 2009 Honda Accord; (2) furniture and other household items acquired during the marriage; (3) Husband's 401(k); and (4) her credit card indebtedness.

Wife filed a request for findings of fact and conclusions of law. *See* TEX.R.CIV.P. 296. No such findings and conclusions were filed, however, and Wife did not file a notice of past due

4

findings of fact and conclusions of law. *See* TEX.R.CIV.P. 297. Husband points out that, in these circumstances, "it is implied that the trial court made all the necessary findings to support its judgment." *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). However, these implied findings are still subject to challenge for legal and factual sufficiency of the evidence. *Id.* We therefore examine the record for evidence concerning each of the categories challenged by Wife to determine if the trial court had sufficient information about the community estate to exercise its discretion in dividing that estate.

"Each party in a divorce proceeding has a responsibility to produce evidence of the value of various properties to provide the trial court with a basis upon which to make the division. And generally, a party who does not provide the trial court with values for the property cannot complain on appeal of the trial court's lack of information in dividing the community estate." [Citation omitted]. *Howe v. Howe*, 551 S.W.3d 236, 254 (Tex.App.—El Paso 2018, no pet.); *see Capellen v. Capellen*, 888 S.W.2d 539, 543 (Tex.App.—El Paso 1994, writ denied)(rejecting husband's claim of insufficient evidence to value certain property where husband testified but did not offer proof of values).

Wife testified at trial and offered evidence concerning her past and present earnings. She did not, however, offer any evidence of the value of any of the couple's assets or liabilities. The only asset about which she complains whose value is uniquely within Husband's knowledge is his 401(k). Husband testified that the value of the 401(k) was approximately $9,000 but that he had taken out a $7,000 loan from that account. The trial court thus had sufficient information to conclude that the value of the 401(k) was $2,000. As to the cars, household items, and credit card debt, Wife did not provide the trial court with any valuation information and cannot now complain on appeal of the lack of such information. *See Howe*, 551 S.W.3d at 254; *Capellen*, 888 S.W.2d

at 543. Wife's first issue is overruled.

*Just and right property division*

In her second issue, Wife contends that the trial court divided the couple's property in a manner that was manifestly unjust or unfair. "Although a trial court does not have to divide the marital estate equally, it must do so equitably." *Howe*, 551 S.W.3d at 253 (citing *Murff*, 615 S.W.2d at 698-99). A trial court may consider a variety factors, often referred to as "*Murff* factors," to determine whether there is a reasonable basis for an unequal property division. *Id.* Those factors include "(1) the spouses' capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) relative physical conditions; (5) relative financial conditions; (6) disparity of ages; (7) size of separate estates; (8) the nature of the property; and (9) disparity of income or earning capacity." *Id.*

An important step in reviewing a trial court's division of property is to "quantify the size of the community pie so the reviewing court can know just how large a slice each spouse was served." [Internal quotation marks omitted]. *Howe*, 551 S.W.3d at 253. The community assets here at issue include (1) the marital residence, valued between $80,000 and $94,000; (2) Husband's 401(k), valued at approximately $2,000; and (3) two unvalued Honda automobiles.[2] The community liabilities include (1) a mortgage balance of $8,000 to $9,000; (2) $17,000 debt on a 2012 Mercedes; (3) $242 monthly payments on a 2014 Hyundai Genesis; and (4) unvalued credit card debt.

Clearly, the most significant community asset is the marital residence. The evidence supports a value of $80,000 and an outstanding debt of $9,000 on that residence. Husband was

---

[2] One of these cars, a fully paid for 2009 Honda Accord driven by Husband, was awarded to Husband. The second car, a 2012 Honda Pilot driven by Wife, was not awarded to either party, nor was the debt on that car allocated to either party. While Wife makes note of the failure to include this car in the court's property division, she does not assert that omission as error requiring reversal of the decree.

6

awarded the residence, but was also ordered to pay the outstanding debt, resulting in a $71,000 benefit to him. Accounting for the 401(k) also awarded to Husband, Husband was awarded property worth approximately $73,000. But Husband was also ordered to pay the community debts owed on two cars owned by the couple's sons. The debt on only one of those cars, the Mercedes, is $17,000. The debt on the other is $242 per month. Even accounting only for the debt on the Mercedes, the $17,000 liability offsets Husband's assets to a net value of $56,000. He was also, however, ordered to pay an equalization award of $34,000 to Wife, effectively reducing that benefit to $22,000.[3]

Wife, on the other hand, was awarded a $34,000 judgment against Husband, as well as the household items she specifically requested. While she complains on appeal that the trial court ordered her to pay credit card debt which "appears to be a large sum," neither the record nor the judgment supports that complaint. The judgment orders that Wife shall pay "[a]ll debts, charges, liabilities, and other obligations incurred solely by [Wife] *from and after May 2015 . . . .*" [Emphasis added]. May 2015 is when the couple ceased to live together. Wife testified that she stopped paying on her numerous credit cards when she moved out of the house, but also that she had not added any charges to those cards since that time. Thus, the divorce decree does not impose on Wife (or on Husband) any liability for the credit card debt incurred during the marriage.

Wife contends that the trial court's property division resulted in a 70/30 split in Husband's favor. This contention is based on numerous value estimates in Wife's brief that have no support in the record. We confine our review to the record before us, which reveals a nearly equal division of the community assets, and imposition of responsibility for three community debts (the mortgage and two car payments for the couple's sons) on Husband. Nevertheless, even if we were to

---

[3] Wife argues that the present value of the monetary award to her is $25,893.79. This argument is based on information not contained in the appellate record and will not be considered.

7

construe the property division as favoring Husband to some degree, we examine the *Murff* factors recited above to determine whether they provide a reasonable basis for that unequal division.

Wife asserts that there is a significant disparity in income and earning capacity because Husband earns $2,100 per month and her highest earnings were $1,600 per month. *See Howe*, 551 S.W.3d at 253 (disparity in income and earning capacity is factor court may consider). But the $2,100 figure is Husband's gross pay. He testified that his net pay is $335 per week, which is approximately $1,340 per month. Wife, on the other hand, testified that she "receives" $1,200 per month from her daughter, indicating that that is net income rather than gross. Using these figures, the disparity between Wife's and Husband's incomes is not of such magnitude as to impact the trial court's exercise of discretion in effecting a just and right property division. *See id.*

Concerning earning capacity, the record does not reveal Husband's line of work but it does show that Wife has typing, computer, and secretarial skills. Wife argues, though, that her opportunities are more limited because she did not finish high school and Husband has one year of university education. The record does not reveal the field Husband studied in that year or whether it has any application to his actual or potential employment. Concerning Wife's actual and potential employment, there is evidence that Wife has held a variety of secretarial and office positions and that, despite the difference in their educations, her use and understanding of English are better than Husband's. Further, while the evidence shows that Husband's net pay is $335 per week, Wife testified that she has held a job where she received $316 net pay per week. The disparity between Wife's and Husband's earning capacity, if any, is not of such magnitude as to impact the trial court's exercise of discretion in effecting a just and right property division. *See id.*

Wife also asserts, as a disparity in her favor, that Husband will receive significantly more

8

in social security payments when he retires. There is no evidence in the record to support this assertion. There is no evidence of Husband's earnings history and whether, or how much, he has paid into social security. And, despite Wife's contention that she spent thirty-five years' cooking and cleaning and being a stay-at-home mom, there is evidence that she, too, worked outside the home during the marriage. In fact, Husband testified that he urged Wife to work precisely so that she could build up her social security benefits. The parties' relative potential social security benefits were not before the trial court and do not enter our analysis.

One factor that does, however, impact the property division analysis is the parties' relative physical conditions. *See Howe*, 551 S.W.3d at 253 (relative physical conditions is factor court may consider). There is no indication in the record that Wife suffers from any adverse physical condition. Husband, however, testified that he has diabetes and high blood pressure, and is considering applying for disability. The trial court was entitled to consider these physical conditions in determining whether to make an unequal property division in Husband's favor.

For all the reasons discussed above, the record does not establish that the trial court's property division was manifestly unfair or unjust. Wife's second issue is overruled.

*Cars as community debt but not community property*

In her third issue, Wife argues that the trial court abused its discretion by treating the debt on the 2012 Mercedes and the 2014 Hyundai Genesis as community debt, but not treating those cars as community assets.

"The community property presumption applies to both assets and liabilities. Therefore, there is a presumption that debt acquired by either spouse during marriage was procured on the basis of community credit." [Citation omitted]. *Richardson v. Richardson*, 424 S.W.3d 691, 697 (Tex.App.—El Paso 2014, no pet.). Further, "[a]n asset purchased on borrowed funds is

presumptively community in character . . . ." *Id.* This presumption may be overcome by clear and convincing evidence. *Viera v. Viera*, 331 S.W.3d 195, 204 (Tex.App.—El Paso 2011, no pet.). "'Clear and convincing' means the measure or degree of proof producing in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established." *Hampton v. Texas Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 566 (Tex.App.—El Paso 2004, no pet.).

Neither party contests that the Mercedes and the Hyundai were purchased during the marriage and that the debt on those cars is community debt. This gives rise to the presumption that the cars are community property. *See Richardson*, 424 S.W.3d at 697. But the record reflects that these cars were given to two of the couple's sons, while the community retained the responsibility for paying the loans with which they were purchased. This evidence overcomes the presumption that the cars are community property; having been gifted to the sons, they are no longer assets of the community estate. *See Handley v. Handley*, 122 S.W.3d 904, 911 (Tex.App.—Corpus Christi 2003, no pet.)(excluding from community estate car purchased during marriage but sold to daughter before parties separated).

Wife argues that she never indicated at trial that she was willing to give her community interest in these two cars to her sons. But there is evidence from which the trial court could conclude that the gifts to the sons were made before Husband and Wife separated. Wife's third issue is overruled.

*Money judgment in lieu of ordering sale of the marital residence*

Wife next contends that the trial court abused its discretion by awarding the marital residence to Husband and a money judgment to Wife, rather than ordering that the residence be sold and the proceeds divided.

10

It is generally preferable to divide an estate by partitioning assets in kind rather than using a money judgment, if an equitable division can be achieved in that way. *Hanson v. Hanson*, 672 S.W.2d 274, 278 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd). Even so, there are circumstances which justify the use of a money judgment to balance out a disproportionate award of assets. *Id.* For example, "the court may be justified in dividing property in [a] manner other than 'in kind' when due consideration is given to such matters as the nature and type of particular property involved and the relative conditions, circumstances, capabilities and experience of the parties." *Id.* (quoting *In Re Marriage of Jackson*, 506 S.W.2d 261, 266 (Tex.Civ.App.—Amarillo 1974, writ dism'd)).

The circumstances of the parties in this case justifies the trial court's decision to use a money judgment rather than ordering the sale of the marital residence. Wife testified that she is living with her daughter. There is no evidence that Wife is paying for her room and board; on the contrary, she is being paid by her daughter. Husband, on the other hand, testified that his living expenses already exceed his income, and that he is providing a home for himself as well as one of the couple's sons. Husband also testified that, if the house were sold, he and his son would have nowhere to live. The trial court did not abuse its discretion by considering these circumstances and concluding that an equitable property division was best achieved by using a money judgment rather than ordering the sale of the marital residence.

Wife also challenges, as an abuse of discretion, the terms of payment of the money judgment. "A trial court should set the term for payment of the cash judgment for as short a period as possible without imposing a serious hardship on the party responsible to pay the judgment." *Hanson*, 672 S.W.2d at 279. The decree orders that Husband pay Wife $34,000 in monthly installments of $250 over the course of 136 months. The question, then, is whether the trial court

11

abused its discretion by determining that ordering a shorter term for payment would impose serious hardship on Husband. We conclude it did not.

Ordering a shorter term for paying the $34,000 judgment would necessarily require increasing the amount of the monthly payments. Husband testified that his weekly net earnings are $335 per week, or roughly $1,340 per month. The monthly mortgage and car payments he is ordered to pay under the decree total $1,366. Utilities, food, health insurance, and car insurance total an additional $1,080 each month. As Husband readily acknowledged, he is already incurring more in monthly living expenses than he is earning. The evidence supports a conclusion that ordering an additional monthly liability of more than the $250 ordered by the court would impose a serious hardship on Husband. *See id.* Given these circumstances, we cannot conclude that the trial court abused its discretion by ordering the money judgment paid in $250 installments over the course of 136 months. Wife's fourth issue is overruled.

## *Zero interest on the money judgment*

In her final issue, Wife asserts that the trial court abused its discretion by ordering in the divorce decree that the Husband's liability on the $34,000 judgment to Wife bear zero percent interest. Her specific complaint is that the court was prohibited from stating an interest rate of zero percent in the decree because it did not state an interest rate (or even mention postjudgment interest) in its rendition of judgment in the Findings and Orders.

The Texas Finance Code provides that "[a] money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." TEX.FIN.CODE ANN. § 304.001. Wife notes that "[p]ost-judgment interest is recoverable even if it is not specifically awarded in the judgment." *DeGroot v. DeGroot*, 369 S.W.3d 918, 926–27 (Tex.App.—Dallas 2012, no pet.). From this principle, she argues that (1) because the Findings and Orders did not

specifically award postjudgment interest, she is entitled to recover interest in some amount, and (2) because zero percent interest is no interest, the court could not order zero percent interest in the divorce decree. The flaw in this argument is that it treats the Findings and Orders as the judgment to which the Finance Code applies; it is not.

It is apparent on the face of the Findings and Orders that it was not intended to be the trial court's final judgment, or even a complete rendition of judgment. For example, the Findings and Orders contains blanks concerning significant issues before the court, not the least of which is to whom a divorce is granted and on what grounds.[4] Other rulings in the Findings and Orders are stated in summary fashion. For example, Husband is ordered to pay the community obligations for "mortgage [,] mercedes[,] hyundai." Given the clearly informal, incomplete, and interlocutory nature of the document, we find no significance in the trial court's failure to state a rate of postjudgment interest.

As noted above, the Texas Finance Code requires that a money judgment specify a postjudgment interest rate. TEX.FIN.CODE ANN. § 304.001. The Final Decree of Divorce here at issue, which contains the money judgment in Wife's favor, specifies a postjudgment interest rate of zero percent. We note that this is not an instance where the trial court overlooked the issue of postjudgment interest or where such interest was inadvertently omitted from the final judgment. Rather, the decree recites a specific postjudgment interest rate, and further recites that the money judgment is part of the division of the parties' community property. This demonstrates that the trial court made a conscious determination that a zero percent interest rate was an integral part of its just and right property division.

---

[4] The Findings and Orders contains the following section:
  After reviewing the pleadings and testimony, the following findings and orders are made.
  o that a divorce be granted to _____, effective _____, on insupportability or fault of _____ by committing _____.

13

Wife's contention on appeal is, in essence, that the trial court had no discretion to order zero percent interest as a part of its just and right property division. But she has not adequately preserved or presented this issue. First, Wife did not bring to the attention of the trial court any assertion that the court could not specify an interest rate of zero percent, and did not inform that court, through her pleadings, motions, or otherwise, what rate of interest she believed was required. *See* TEX.R.APP.P. 33.1 (preservation of error requires making timely complaint to trial court). Even on appeal, Wife does not cite any authorities establishing that the trial court had no authority or discretion to specify a rate of zero percent, nor does she identify for this Court what she believes the rate of postjudgment interest should have been. *See* TEX.R.APP.P. 38.1 (brief must contain clear and concise argument supported by appropriate citation to authorities). In addition, Wife has not identified any legal grounds or authority for this Court to disturb the trial court's just and right property division by changing the stated postjudgment interest rate. *See id.*

For all of the foregoing reasons, Wife's fifth issue is overruled.

## CONCLUSION

Wife has not demonstrated that the trial court's property division was so unjust and unfair as to constitute an abuse of discretion. *See Kaftousian*, 511 S.W.3d at 621. The Final Decree of Divorce is affirmed.

August 21, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

14